NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

TAINO FLORES, *Petitioner/Appellee,*

*v.*

ASHLEY FLORIAN, *Respondent/Appellant.*

No. 1 CA-CV 25-0873 FC

FILED 06-18-2026

Appeal from the Superior Court in Maricopa County
No.  FC2022-094582
The Honorable Timothy J. Ryan, Judge, *Retired*

**AFFIRMED IN PART; REMANDED IN PART**

COUNSEL

Rideout Law, PLLC, Scottsdale
By Steven Dorr Eckhardt
*Counsel for Petitioner/Appellee*

Ashley Florian, Phoenix
*Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge D. Andrew Gaona delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge Anni Hill Foster joined.

---

**G A O N A**, Judge:

¶1          Ashley Florian ("Mother") appeals the superior court's order affecting legal decision-making, parenting time, and child support. We remand for the superior court to make additional parenting time findings under A.R.S. § 25-403.02, but otherwise affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          Mother and Taino Flores ("Father") share one minor child born in 2022. Shortly after their child's birth, Father petitioned to declare his residence the primary residence, limit Mother's parenting time to only supervised time, award him sole legal decision-making authority, and order Mother to pay child support. The court held an evidentiary hearing and entered temporary orders for joint legal decision-making and shared parenting time.

¶3          Later in 2022, the court entered a consent judgment under which the parents agreed to joint legal decision-making and that Father would pay $312 per month in child support. They also agreed to (1) alternating weeks of unsupervised parenting time, (2) exchange the child each Sunday at Arizona Mills mall, (3) "communicate at least two times per week per day via text message or email communication" about the child's "status and wellbeing," (4) send an update each Wednesday and each time their parenting time ended, and (5) the parent receiving the update to "respond with an acknowledgement of receipt."

¶4          In 2024, Mother petitioned to modify key provisions of that judgment. The court set a hearing to address, among other filings, legal decision-making, parenting time, and child support. At the hearing, Father testified and admitted evidence. He also submitted an updated affidavit of financial information ("AFI"). Mother "invoke[d] her 5th Amendment Rights," "decline[d] to testify," and introduced no evidence. The court also granted Mother's requested fee waiver around this same time.

¶5          After the hearing, the court modified the legal decision-making, parenting time, and child support orders. Applying the factors set forth in A.R.S. § 25-403(A) and § 25-403.01, the court found it in the child's best interests for Father to exercise sole legal decision-making authority. Relying on Father's AFI and imputing full-time minimum wage earnings to Mother, the court completed a new child support worksheet and ordered Mother to pay $294 per month. The court also modified the parenting time plan, ruling that "Mother's supervised parenting time shall be from 5:00 p.m. to 7:00 p.m. on Tuesdays; and 12:00 p.m. to 4:00 p.m. on Sundays, with Mother paying for supervision unless the parties select an agreed-upon supervisor."

¶6          Mother appealed and we have jurisdiction. A.R.S. §§ 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

¶7          Mother argues the superior court erred by (1) violating her due process rights, (2) modifying the legal decision-making authority, (3) miscalculating child support, (4) refusing to grant her a fee waiver, and (5) ordering parenting time without sufficient specificity. She also argues that "[t]he combined effect of the court's errors . . . created an overwhelming appearance of judicial bias against" her. Although she lists the court's denial of her motion to dismiss in the "issues presented for review" section of her opening brief, she fails to develop this argument in any way and we consider it waived. *Polanco v. Indus. Comm'n of Ariz.*, 214 Ariz. 489, 492 ¶ 6 n.2 (App. 2007); ARCAP 13(a)(7)(A).

¶8          As the appellant, it was Mother's burden to ensure the record on appeal contains all transcripts she wanted us to review. ARCAP 11(b)–(c). Because Mother provided no transcripts, we presume the missing portions of the record support the superior court's findings. *State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 30 ¶ 16 (App. 2003).

¶9          We review Mother's due process claim de novo. *Jeff D. v. Dep't of Child Safety*, 239 Ariz. 205, 207 ¶ 6 (App. 2016). "Due process entitles a party to notice and an opportunity to be heard at a meaningful time and in a meaningful manner, as well as a chance to offer evidence and confront adverse witnesses." *Cruz v. Garcia*, 240 Ariz. 233, 236 ¶ 11 (App. 2016) (cleaned up).

¶10          Mother contends the court violated her due process rights by "treating [her] filings with less weight than those of opposing counsel." She fails to support her argument with any citations to the record. ARCAP

13(a)(7); *see also Ramos v. Nichols*, 252 Ariz. 519, 522 ¶ 8 (App. 2022) ("An appellant who fails to make a 'bona fide and reasonably intelligent effort to comply with the rules' will waive issues and arguments 'not supported by adequate explanation, citations to the record, or authority.'") (citation omitted). In any event, Mother didn't appeal from any previous court orders addressing these unidentified filings, meaning we lack jurisdiction to review them. *See In re Marriage of Thorn*, 235 Ariz. 216, 218 ¶ 5 (App. 2014) (we "only acquire[] jurisdiction over those matters identified in a timely filed notice of appeal").

**¶11**        As to the hearing that led to the order from which Mother *did* appeal, Mother had notice the court would be addressing legal decision-making, parenting time, and child support. And the court invited Mother to testify and present evidence. She chose instead to "invoke[] her 5th Amendment Rights," "decline[d] to testify," and introduced no evidence. The court still allowed Mother to "address[] [it] regarding legal decision-making." In short, the court didn't deprive Mother of due process rights she chose not to exercise.

**¶12**        Mother next argues, without support, that the court erred by modifying the legal decision-making order without making required findings under A.R.S. § 25-403(A). We review legal decision-making orders for an abuse of discretion. *DeLuna v. Petitto*, 247 Ariz. 420, 423 ¶ 9 (App. 2019). Contrary to Mother's claim, the court made detailed findings addressing the best interests of the child and each of § 25-403(A)'s eleven factors. For example, it found that "Mother is no longer involved in her children's lives and has refused to conform her actions in accordance with the best interests of the child by refusing to acknowledge her substance abuse and mental health issues." The court's findings are supported by the record, *see Burton*, 205 Ariz. at 30 ¶ 16, and it didn't abuse its discretion in modifying the legal decision-making order, *see Backstrand v. Backstrand*, 250 Ariz. 339, 343 ¶ 14 (App. 2020) (we will not reverse unless there is a "clear absence of evidence to support" the superior court's findings that there has been a material change of circumstances and that modification is in the child's best interests).

**¶13**        Mother contends, again without support, that the court's "calculation of child support is based on an income that is alleged to be significantly higher than her actual earnings." We review a child support modification for abuse of discretion. *Nia v. Nia*, 242 Ariz. 419, 422 ¶ 7 (App. 2017). The court may, as it did here, presume a parent is capable of full-time employment earning minimum wage. A.R.S. § 25-320 app. ("Guidelines") § II.A.4.b. Mother neither submitted an updated AFI nor testified to her

financial situation. The court properly completed an updated child support worksheet using Father's updated AFI and attributing full-time minimum wage earnings to Mother. We find no error in the court's actions.

**¶14** Mother also argues that "[t]he [s]uperior [c]ourt's conflicting rulings and subsequent denial of [her] fee deferral under A.R.S. § 12-302 unlawfully deprived an indigent litigant of a statutory benefit." Mother doesn't support her argument with citations to the record that might guide us in determining which rulings she challenges. *See* ARCAP 13(a)(7)(A). That aside, the superior court granted Mother's request for a fee deferral, and we continued that deferral to her fees on appeal. We discern no error.

**¶15** Next, Mother argues that the portion of the court's order addressing parenting time "lack[s] statutory specificity and findings" under A.R.S. § 25-403.02. We review parenting time plans for an abuse of discretion. *DeLuna*, 247 Ariz. at 423 ¶ 9. "An abuse of discretion occurs when the court commits an error of law in reaching a discretionary decision." *Id.* Section 25-403.02(C) says that "[p]arenting plans shall include at least the following:"

> 1. A designation of the legal decision-making as joint or sole as defined in § 25-401.
>
> 2. A description of each parent's rights and responsibilities for the personal care of the child and for decisions in areas such as education, health care and religious training.
>
> 3. A practical schedule of parenting time for the child, including holidays and school vacations.
>
> 4. A procedure for the exchanges of the child, including location and responsibility for transportation. The parenting plan must specify when the exchange is required to take place at a safe exchange location pursuant to § 25-403.10.
>
> 5. A procedure by which proposed changes, relocation of where a child resides with either parent pursuant to § 25-408, disputes and alleged breaches may be mediated or resolved, which may include the use of conciliation services or private counseling.
>
> 6. A procedure for periodic review of the plan's terms by the parents.

7. A procedure for parents to communicate with each other about the child, including methods and frequency.

8. A statement that each party has read, understands and will abide by the notification requirements of § 25-403.05, subsection B.

The court's ruling modifying the parenting time plan—in full—is "Mother's supervised parenting time shall be from 5:00 p.m. to 7:00 p.m. on Tuesdays; and 12:00 p.m. to 4:00 p.m. on Sundays, with Mother paying for supervision unless the parties select an agreed-upon supervisor."

**¶16**      This modification deviates from the previous ruling in significant ways. Under the modification, Mother's time is reduced and must be supervised. And the previous requirements about exchanging the child and communication between the parents no longer make sense with the new parenting time plan. For example, the previous order required the parents to exchange the child each Sunday at Arizona Mills mall. While the new order is clear that Mother has supervised parenting time on Sundays, it is unclear if the Arizona Mills mall requirement remains in place. Should Mother and Father meet the supervisor at Arizona Mills mall? Should Father meet the supervisor at Arizona Mills mall and allow them to transport the child from there? Is the Arizona Mills mall provision no longer in effect at all?

**¶17**      What's more, the previous order required the parents "to communicate at least two times per week per day via text message or email" about the child's "wellbeing and status," to send updates at the end of their parenting time, and to acknowledge receipt of the other parent's updates. But, given Mother's new reduced time and supervision requirements, it is unclear whether and how these communication requirements still apply. Is Mother to send Father updates at the end of her supervised parenting hours? Despite now having sole legal decision-making, is Father expected to send updates each day he has the child, or at the end of his parenting time (which would coincide with Mother's supervised hours)? Should either parent acknowledge receipt of any updates sent?

**¶18**      The new plan lacks the specificity needed to satisfy § 25-403.02's requirements and fails to give the parents guidance on what they must follow from the previous order and what they should now disregard. *See* A.R.S. § 25-403.02(B) ("[T]he court shall adopt a parenting plan . . . that maximizes the [parties'] respective parenting time."). We remand for the superior court to make sufficient findings under § 25-403.02 but leave to the

court's discretion whether another hearing is necessary to make those findings. *See, e.g.*, *Phoenix v. Ferguson*, 1 CA-CV 22-0309 FC, 2023 WL 2250783, at *3, *4 ¶¶ 20, 24 (Ariz. App. Feb. 28, 2023) (mem. decision) (remanding an order modifying parenting time for the superior court to determine "each listed element" of A.R.S. § 25-403.02(C)).[1]

**¶19** Finally, Mother argues that "[t]he combined effect of the court's errors . . . created an overwhelming appearance of judicial bias against" her. In support, she cites "*Kelly v. Kelly*" but includes no reporter or pincite. Our review reveals no case with that name addressing judicial fairness. "A trial judge is presumed to be free of bias and prejudice and to overcome this presumption, a party must show by a preponderance of the evidence that the trial judge was, in fact, biased." *Cardoso v. Soldo*, 230 Ariz. 614, 619–20 ¶ 19 (App. 2012). Mother hasn't established (and the record doesn't support) her claim.

**¶20** Mother asks us to award "her costs incurred in this appeal." We decline her request. *See* A.R.S. §§ 12-341, -342. We also note that Mother's briefs contain case names that don't support her cited propositions and may not exist. *See supra* ¶ 19. Going forward, failing to provide accurate legal authority may result in sanctions. *See* ARCAP 13(a)(7); *Flynn v. Campbell*, 243 Ariz. 76, 83 ¶ 24 (2017) (we hold self-represented litigants to the same standard as attorneys).

**¶21** Father requests his attorneys' fees and costs on appeal under "A.R.S. § [25]-324 and ARCAP 21 due to Mother's unreasonable position on appeal." Father prevailed on more issues than Mother and several of Mother's positions were unreasonable and resolved by the record. In our discretion, we grant Father's request for fees and costs on appeal subject to his compliance with Arizona Rule of Civil Appellate Procedure 21(b). *See, e.g.*, *Whitt v. Meza*, 257 Ariz. 176, 186 ¶ 39 (App. 2024) (fees); *In re Marriage of Morris & Mandel*, 255 Ariz. 158, 165 ¶ 36 (App. 2023) (costs).

---

[1] Cited for persuasive value under Ariz. R. Sup. Ct. 111(c)(1)(C).

## CONCLUSION

**¶22** We remand for the superior court to make the necessary findings under A.R.S. § 25-403.02. We otherwise affirm.

